# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILLIAM JOHN CLARK**,

      Petitioner,

v.                                                        Civil Action No. 2:08cv118
                                                      Criminal Action Nos. 02:05cr44
                                                                            02:05cr47
                                                       (Judge Maxwell)

**UNITED STATES OF AMERICA**,

      Respondent.

## OPINION/REPORT AND RECOMMENDATION

### I. Factual and Procedural History

**A. Petitioner's Federal Habeas Proceedings**

On December 3, 2008, the *pro se* petitioner, William John Clark, filed a motion under 28 U.S.C. § 2255 to vacate, Set Aside, or Correct Sentence by a person in Federal Custody. On December 4, 2008, the undersigned determined that summary dismissal of this case was not warranted and the respondent was directed to file an answer. The respondent filed an answer on January 5, 2009. Petitioner filed his reply on February 5, 2009. The case is before the undersigned for a report and recommendation pursuant to LR PL P 83.15 et seq.

**B. Petitioner's Conviction and Sentence**

Petitioner was the sole individual named in a five count indictment filed on November 1, 2005 in the Northern District of West Virginia. See Indictment (02:05cr47[1] dckt. 37). Counts One,

---

[1] The indictment appears in a different docket because it was entered prior to Judge Maxwell's January 4, 2006 Order specifying that: "following entry of [said] Order in 2:05cr44 and 47, all pleadings filed for [Mr. Clark] shall be filed ONLY in 2:05cr44." See cr. dckt 63 at 5-6.

Two, Three, and Four charged that the petitioner was a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). *Id.* Count Five charged that the petitioner was an unlawful user/addict-to-controlled-substance in possession of firearms, in violation of 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 924(a)(2). *Id.*

On May 31, 2006, the petitioner signed a plea agreement by which he agreed to plead guilty to Count Four of the indictment -- being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). See Plea Agreement (dckt. 86) at ¶1. In the plea agreement, the petitioner agreed that the maximum penalty to which he was exposed was not more than ten years (120 months) imprisonment. *Id.* at ¶ 2. Under the agreement, the petitioner retained his appellate rights with respect to any sentence imposed above an adjusted offense level (subtotal) 20. *Id.* at 12.

On the same day he signed his plea agreement, the petitioner entered his plea in open court. At the beginning of the petitioner's plea hearing, the Court advised the petitioner that he should ask any questions that came to his mind during the hearing, and to discuss any matters of concern with his attorney. See Transcript of Plea Hearing (dckt. 99) at 4. Next, the Court ascertained that the petitioner was forty-nine years old, had completed his GED, and could read, write, and understand the English language.[2] *Id.* at 5.

The Court proceeded to read Count Four of the indictment into the record, and then advised the petitioner that the maximum term for such charge was 120 months. *Id.* at 9. Next, the United States Attorney ("respondent") read the plea agreement aloud, detailing the sentencing provisions contained therein. *Id.* at 10-18. The petitioner stated that he understood and agreed with the terms contained in the plea agreement. *Id.* at 20. He also confirmed that he had discussed with his attorney

---

[2]The petitioner noted that he does so somewhat "slower than normal." See dckt. 99 at 5.

the sentencing guidelines and the relevant factors that would be considered under 18 U.S.C. § 3553. *Id.* at 23-24.

The petitioner then stated that he understood that the Court would not be able to compute a sentence until after a presentence report had been completed and both he and the respondent had the opportunity to object to any of its findings. *Id.* at 24. The Court also advised the petitioner on the concept of "relevant conduct" and what information it takes into account during sentencing, including "circumstances and injuries relevant to the [crime that the petitioner had been] charged with." *Id.* at 25. After discussing it with his counsel, the petitioner stated that he understood the concept of "relevant conduct." *Id.* He also stated that he understood that the Court may, in some circumstances, depart from the sentencing guidelines, either upward or downward, so long as the sentence is within the statutory maximum. *Id.*

The Court then verified that the petitioner understood the charges in Count Four of the indictment, the maximum penalty for the charges, and the rights that he was giving up by pleading guilty. *Id.* at 28. Afterwards, the petitioner pleaded guilty to the charges. *Id.*

Next, the respondent proffered evidence in support of its indictment against the petitioner. *Id.* at 29-31. When given the opportunity to do so, the petitioner did not change, challenge, or add to the respondent's evidence. *Id.* at 31-32. The petitioner then affirmed that he had neither been coerced nor threatened into making his plea, nor had he made his plea as the result of a prediction about his possible sentence. *Id.* at 33. The petitioner also stated that his plea was not the result of any promises made outside of the plea agreement. *Id.*

Finally, the petitioner stated that his counsel had adequately represented him, and that counsel had left nothing undone that he thought should have been done on the matter. *Id.* at 34. The Court

accepted the petitioner's plea of guilty as freely and voluntarily made. *Id.* The Court also reviewed, *de novo*, the petitioner's objections to the undersigned Magistrate Judge's order denying the petitioner appointment of new counsel. *Id.* The Court found that the order was appropriate, and that in light of the petitioner's plea, the issue was now moot. *Id.*

On January 25, 2007, the Court held the sentencing hearing. See Transcript of Sentencing Hearing (dckt. 117). At the hearing, the Court first verified with petitioner's counsel that he had received a copy of the Presentence Report ("PSR") and reviewed it with the petitioner. *Id.* at 2. Second, the Court stated that the PSR indicated a total offense level of 21 (starting from a base level of 20, adding a four level enhancement for 8 to 24 firearms, and subtracting 3 levels for acceptance of responsibility). *Id.* at 5. The court also noted that the petitioner's Criminal History Category was 3, and thus the applicable guideline sentencing range would be 46 to 57 months. *Id.*

Next, the respondent moved to withdraw six objections to the PSR, which recommended against treating the petitioner as an armed career criminal. *Id.* at 9. The respondent withdrew the objections because it was unable to obtain independent evidence to support them. *Id.* The respondent then argued in favor of its remaining four objections which challenged the PSR's recommendation against obstruction of justice and a 3C1.1 enhancement. *Id.* at 9-10. Because the armed career criminal enhancement was no longer at issue, the petitioner's attorney affirmed that the Guideline calculations previously mentioned would apply. *Id.* at 10. Petitioner's counsel then argued against the respondent's 3C1.1 objections. *Id.* at 10-11. He also argued for petitioner's objection to the PSR's "upward departure" recommendation, noting the petitioner's efforts towards rehabilitation and accomplishments while in jail. *Id.* at 11. The Court overruled the respondent's remaining four objections, and overruled the petitioner's objection. *Id.* at 13-15.

4

After examining the petitioner's history in totality, the Court found that a Criminal History Category of 3 under-represented the seriousness of his criminal history and departed upward to Category 6. *Id.* at 15. Next, the Court determined that under the new Criminal History Category of 6 and the previously determined offense level of 21, the appropriate Guideline sentencing range was 77-96 months. *Id.* Subsequently, petitioner's counsel objected to the manner in which the Court determined the new Criminal History Category, noting that the Fourth Circuit required justification for each vertical level increase. *Id.* at 16. The Court took note of the objection but concluded that it was not violating Fourth Circuit precedent by the manner in which it departed. *Id.* The court further noted that the guidelines are advisory and that it may also consider the factors under 18 U.S.C. § 3553 (a). *Id.*

Finally, the petitioner addressed the Court at which time he specifically apologized for his criminal history. *Id.* at 17. Petitioner's counsel asked the Court to consider the low end of the Guideline sentencing range in light of the Court's departure. *Id.* at 18. Pursuant to the plea agreement, the respondent also recommended the low end of the Guideline sentencing range. *Id.* Ultimately, the Court sentenced the petitioner to 77 months imprisonment. *Id.* In closing, the Court made note that the petitioner, under the plea agreement, retained his appellate rights with respect to any sentence imposed above the applicable guideline sentencing range at an adjustable offense level subtotal 20. *Id.* at 20.

## C. **Direct Appeal**

On January 29, 2007, the petitioner filed a direct appeal with the United States Court of Appeals for the Fourth Circuit on the grounds that his sentence was unfair due to the sentencing court's failure to explain why either category IV or category V of the sentencing guidelines was

insufficient. See Notice of Appeal (dckt. 111). On September 6, 2007, the Court of Appeals vacated and remanded the district court's decision. See Unpublished Per Curiam of USCA (dckt. 126) On December 11, 2007, the district court amended judgment and re-affirmed the original sentence. See Amended Judgment (dckt. 136) and Order Statement of Reasons (dckt. 137).

D. **Federal Habeas Corpus Petition**

    **Petitioner's Contentions (CR dckt. 144, CV dckt. 1)**

        (1) Petitioner was deprived of a fair sentencing due to counsel's failure to object to the PSR.

        (2) The sentencing court failed to verify that the petitioner and his attorney read and discussed the PSR, as required by FED. R. CRIM. P. 32(i)(1)(A).

            (a) The petitioner was not made aware of the contents of the plea agreement prior to signing it.

        (3) Petitioner's Sixth Amendment right to effective assistance of counsel was violated during sentencing.

            (a) Counsel was not present during presentence interview.

            (b) Counsel failed to fully explain the plea agreement to petitioner, and failed to provide petitioner with a copy of the PSR prior to his signing the plea agreement.

            (c) Counsel rushed the petitioner, and directed him to sign the plea agreement.

        (4) The sentencing court improperly departed from the advisory sentencing guidelines, violating FED. R. CRIM. P. 32(h).

    **Government's Response (CR dckt. 155, CV dckt. 3)**

        (1) Petitioner's claim that counsel failed to object to the PSR is unsupported by the record.

        (2) The record shows that the petitioner confirmed his understanding of the sentencing possibilities and the contents of the plea agreement.

(3) Ineffective Assistance of Counsel

    (a) Petitioner's claim that he was denied his right to counsel during the presentence interview is not supported by the record.

    (b) Petitioner's claim that he was not provided a copy of the PSR prior to signing the plea agreement is supported by the record, but is also in compliance with procedure under 18 U.S.C. § 3552(a).

    (c) Petitioner's claim that he was coerced into signing the plea agreement is unsupported by the record.

(4) The petitioner's claim that the District Court violated FED. R. CRIM. P. 32(h) is unsupported by the record. Moreover, the petitioner has not shown any prejudice resulting from an alleged violation of the rule.

**Petitioner's Reply (CR dckt.159)**

(1) The record does not contradict the petitioner's claim that his counsel failed to object to use of dismissed charges (as opposed to objecting to the upward departure) during sentencing.

(2) The respondent has not adequately responded to this ground. Respondent has discussed the ground as it pertains to the plea hearing, but has neglected to discuss the ground as it pertains to the sentencing hearing.

(3) Ineffective Assistance of Counsel

    (a) It is the duty of either petitioner's counsel or the probation officer to request that the probation officer notify petitioner's counsel of the presentence interview.

    (b) The respondent's reading of the plea agreement in open court is not a substitute for the petitioner's counsel reading/reviewing the agreement with him.

    (c) Petitioner's statement that he was satisfied with his counsel was made under the assumption that counsel's prediction of a four to five year sentence was accurate.

    (d) Respondent improperly cites to the record regarding these statements, and should be sanctioned.

(4) Even if the petitioner was on notice as to the Court's upward departure, he was unaware of the contents of the PSR.

In addition to the above re-asserted grounds, the petitioner raises 1 new ground:

(5) The respondent has violated FED. R. CIV. P. 11 by failing to properly sign and date its response, and by not timely providing the petitioner with the response.

## II. Analysis

In the Fourth Circuit, "[a] petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### A. Ineffective Assistance of Counsel Claims

The Supreme Court has announced the two part test to determine effectiveness of counsel. First, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-688 (1984). Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Thus in the case of a sentencing hearing, the petitioner must show that there is a "reasonable probability"

that but for counsel's errors, sentencing would have been more lenient. Royal v. Taylor, 188 F.3d 239, 248-249 (4th Cir. 1999) (Applying the Strickland test to a claim of ineffective counsel during sentencing).

"[A] defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). Against this background, the undersigned examines the petitioner's claims.

**Ground One – Counsel was ineffective when he failed to object to the PSR.**

Petitioner asserts that he had ineffective assistance of counsel during the sentencing hearing. Specifically, he contends that his counsel failed to object to the inclusion of the petitioner's dismissed prior record in the PSR. As the respondent notes in its response, however, the record shows that the petitioner's counsel did object to the upward departure recommended in the PSR and also objected to the "manner in which" the Court arrived at the departure. See dckt. 117 at 11, 16.

Furthermore, the record shows that the petitioner's attorney filed an appeal challenging how the Court departed from the sentencing guidelines and the Fourth Circuit Court of Appeals remanded the case. See dckt. 126 at 1-2. In doing so, the Fourth Circuit agreed with the district court as to the reasonableness of the departure, but also agreed with petitioner that the court had not adequately explained the reasons for its departure. *Id.* The Court later amended its judgment, more fully explaining the departure, and the petitioner did not appeal the matter further. See dckt. 136, 137.

The petitioner has provided no evidence to demonstrate that his counsel failed to properly

9

object to the PSR, or that he otherwise performed below a reasonable standard. Thus, on the strength of the record, this ground fails.

### Ground Three – Infringement on Right to Effective Counsel at sentencing and during plea

Petitioner contends that his right to effective assistance of counsel was infringed upon during the sentencing hearing. Specifically, he contends that his counsel was not present during the presentence interview, thus depriving him of his right to effective assistance of counsel. The petitioner also makes three claims that pertain to his right to effective counsel during the plea hearing. Specifically, he contends that he was not provided with a copy of the PSR prior to or during the plea hearing, that the plea agreement was neither discussed with him nor provided to him, and that he was coerced into signing the plea agreement. The Court addresses each assertion in turn.

1. **Sentencing**

Petitioner claims that he was denied access to effective assistance of counsel because his attorney was not present at the presentence interview conducted by the probation officer. FED. R. CRIM. P. 32(c)(2) states in pertinent part: "The probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview."

Here, as the respondent notes in its response, the petitioner has not alleged that he requested his attorney be notified of the interview. Petitioner, however, maintains in his reply that the duty to request counsel be present falls on either the probation officer or on counsel. Such a reading of the rule is untenable. When considering issues of statutory construction, we must first consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear that

is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984).

First, and most obviously, requiring the probation officer to request of themselves that an interviewee's counsel be present at the interview trivializes the rule. If the drafters intended for the probation officer to always notify counsel, they would not have included the "on request" language and perhaps substituted it with something which gives more deference to the probation officer Regardless, the probation officer is not subject to a charge of ineffective assistance of counsel and this portion of the petitioner's argument must fail.

Second, the plain and unambiguous language of the rule also precludes a reading that requires the interviewee's attorney necessarily be the requestor. The rule speaks in the present tense about the "probation officer" who "interviews a defendant," not "intends to interview" or some other forward looking language. Under such a reading, the rule means that the person being interviewed may request that his attorney be present, and if he does, the probation officer must then provide notice and reasonable opportunity for the attorney to attend. The petitioner has provided no evidence that he made such a request.[3] In fact, he puts forth contradictory evidence that the probation officer *ignored his counsel's request* to be included in the presentence interview. See dckt. 159 at 8. Thus, this ground fails.

   2. **Plea**

Petitioner next contends that he was denied effective assistance of counsel at the plea hearing.

---

[3]The petitioner, in his reply brief, notes in the alternative that his counsel told the probation officer that he would be available to attend the presentence interview, but that the probation officer conducted the interview without petitioner's counsel, thus violating his right to effective assistance of counsel. See dckt. 159 at 7-8 and dckt. 159-1 at 2. As discussed, under the rule it is the petitioner's duty to request counsel, not his counselor's duty.

11

First, the petitioner asserts that he was not provided with a copy of the PSR prior to signing the plea agreement and thus his counsel was ineffective. As the respondent points out in its response, the PSR is not available at the time of the plea hearing because it is not prepared until prior to *sentencing*. See 18 U.S.C. § 3552(a). Therefore, the petitioner's counsel could not provide him with a copy of the PSR at the plea hearing because it did not yet exist. What's more, the record also clearly indicates that at the plea hearing, the court directed the Chief Probation Officer to prepare a PSR, and asked the petitioner to cooperate in that process, further putting him on notice as to the procedural nuances of preparing the PSR. See dckt. 99 at 35. And, the petitioner raised no issues or questions regarding the PSR at the time he was put on notice of its impending creation. *Id.* Finally, the record indicates that when the PSR was produced, petitioner's counsel[4] did review its contents with him. See dckt. 117 at 2. The petitioner's claim therefore fails.

Next, the petitioner asserts that his counsel was ineffective because prior to the petitioner signing the plea agreement, his attorney did not review it with him or provide him with a copy. Though not insurmountable, the Rule 11 hearing is designed to act as "a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of verity." *Id.* Here, the record shows that during the Rule 11 hearing, petitioner's attorney confirmed that he had gone over the details of the plea agreement with the petitioner. See dckt. 99 at 22. In addition, the petitioner affirmed the Court's query as to whether he was satisfied with his counsel's performance. *Id.* at 33-34. He also answered "No, I don't think so" to the Court's question as to whether there was anything he thought that his

---

[4]The court notes that the petitioner had a change of counsel between the plea and sentencing stages.

counsel should have done that was not done. *Id.* The petitioner has provided no additional evidence to support his contention that counsel failed to review the plea agreement with him prior to his signing it. Accordingly, without more, and on the strength of the record, this ground must fail.

Nonetheless, even assuming, *arguendo*, that this claim had some support in the record, "if the information given by the court at the Rule 11 hearing corrects or clarifies . . . earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." United States v. Lambley, 974 F.2d 1389, 1395 (4th Cir. 1992)(en banc). Here, the record shows that the plea agreement was read aloud in open court and that the petitioner was given the opportunity to ask questions and discuss the plea with his attorney. See dckt. 99 at 4-18. In fact, the record shows that the petitioner took the opportunity to discuss the proceedings with his counsel a number of times. See dckt. 99 at 25, 33. The record also shows that the petitioner affirmed that he understood the plea agreement. *Id.* at 20. Consequently, any failure on the part of counsel was corrected by the court.

Last, the petitioner puts forth that he was coerced by counsel into signing the plea agreement. A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), cert denied, 503 U.S. 997 (1992). Here, there is no evidence on the record that shows that the petitioner was coerced into signing the plea agreement. In fact, the record shows that the petitioner stated that his plea was made freely, and without coercion. See dckt. 99 at 33. As noted above, the petitioner also stated for the

13

record that he was satisfied with the representation of his attorney. *Id.* at 33-34.[5] Finally, the petitioner addressed the court during his sentencing hearing. At no time during his allocution did he state that he had been coerced into signing the plea agreement. Accordingly, the petitioner's contention that he was coerced by counsel into signing the plea agreement does not stand up.

## B. Remaining Claims

### Ground Two – District Court's Failure to Comply with FED. R. CRIM. P. 32(i)(1)(A)

In the first of his three remaining grounds, the petitioner asserts that the Court failed to verify that he had reviewed the contents of the PSR with his attorney. FED. R. CRIM. P. 32(i)(1)(A) states that "[a]t sentencing, the court . . . must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Here, the record clearly shows that the Court verified that the petitioner's counsel reviewed the PSR with him. See dckt. 117 at 2. The petitioner does not provide any facts that contradict the record and this claim fails.

### Ground Four – District Court's Failure to Comply with FED. R. CRIM. P. 32(h)

In this ground, the petitioner maintains that the district court erred by not providing notice that it planned on to depart from the sentencing guidelines. FED. R. CRIM. P. 32(h) states in pertinent part: "Before the court may depart from the applicable sentencing range on a ground *not identified* for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure." (Emphasis added).

---

[5]As the petitioner notes in his reply, he asked the Court several times to replace his counsel. See dckt. 159 at 7. The Court, however, did not find grounds to order appointment of new counsel and even denied the petitioners appeal and objection to Magistrate Judge Kaull's order denying appointment of new counsel. See dckt. 99 at 35.

In this instance, the record shows that the PSR included a recommendation for an upward departure from the applicable sentencing range. See dckt. 117 at 8. In fact, the petitioner objected to the probation officer's recommendation for an upward departure. *Id.* at 8, 11. Thus, the Court was under no further obligation to put the petitioner on notice that it planned to depart from the applicable sentencing range.

**Ground Five (And a portion of re-asserted Ground Three) – Sanctions**

Finally, the petitioner contends that the respondent violated FED. R. CIV. P. 11 by not properly signing its response brief. He further argues that the respondent did not timely provide him with a copy of its response. In ground three, petitioner also asserts that the respondent improperly cited to the record, and thus should be sanctioned. The Court will take up each issue in turn.

FED. R. CIV. P. 11(a) requires that:

> Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name [and must] state the signer's address, e-mail address, and telephone number . . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

The record clearly shows that the counsel for the respondent signed the response. See dckt. 155 at 10-11. The petitioner is advised to take note of the portion of the document that contains the string "/s/" followed by the signer's typed name. This suffices as a "signature" for the purposes of filing electronic documents in this court. The other pertinent information required by FED. R. CIV. P. 11(a)[6] is also present, as the record shows. See dckt. 155 at 10. Thus, the petitioner's claim is

---

[6]"[T]he signer's address, e-mail address, and telephone number." FED. R. CIV. P. 11(a).

unfounded and must fail.[7]

Next, the petitioner suggests that the respondent has not timely provided him with a copy of the response, and thus should be sanctioned. The petitioner specifically puts forth that 1) the respondent did not serve him with a response within thirty days of the Order directing it to respond.

In it's ORDER DIRECTING RESPONDENT TO ANSWER § 2255 PETITION, the Court gave the respondent "thirty (30) days from the date of [the] Order in which to file an answer to Petitioner's § 2255 motion." See dckt.150 at 1. The order gave the petitioner thirty days thereafter to file a reply. *Id.* FED. R. CIV. P. 6 (a)(1) provides that:

When the period is stated in days or a longer unit of time:

(A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

The thirty days thus began running on the day the order is entered (here, December 5, 2008). Counting each day after December 5th for thirty days results in a response date of January 4, 2010. Because that date, the last day of the period, fell on a Sunday, the period ran until the next day, January 5, 2009. Here, the record shows that the respondent timely filed its response on January 5, 2009 and did not violate the Court's Order. See dckt. 155.

The petitioner also asserts that the respondent improperly cited to the record twice and should

---

[7]The Court also notes that even if the respondent had failed to sign its response, which clearly is not the case, petitioner has not alleged that he notified respondent of the error so that it could "promptly correct" it. Thus, his rule 11 argument would fail on that ground regardless.

be sanctioned. See dckt. 159 at 9. The petitioner first points to a citation the respondent makes at page seven of its response. There, the respondent paraphrases a portion of the plea hearing noting that the petitioner had informed the court that "he had not been threatened or coerced to enter a guilty plea and that he was pleading guilty because he was, in fact, guilty of the crime charged against him. See DOC #99, p. 33." See dckt. 155 at 7. Although the exact language paraphrased by the respondent does not appear completely on page thirty-three of the plea hearing transcript, some of it does. What's more, a thorough reading of the transcript shows that the respondent's paraphrase, ending with a cite on page thirty-three, is a reasonable summation of the petitioner's affirmation of his guilt during the Rule 11 colloquy. See *e.g.* dckt. 99 at 28 line 15-21; at 32 line 5-10; at 33.

The second allegedly erroneous citation the petitioner calls to the Court's attention is also at page seven of the respondent's response. See dckt. 159 at 12. Specifically, the petitioner calls out the respondent's cite to the petitioner's assertion that "there was nothing that his attorney had not done for him." *Id*. He contends that the respondent improperly pointed to page thirty-four of the plea transcript. *Id.* Page thirty-four of the plea transcript contains the following relevant language:

> THE COURT: Has your attorney left anything undone that you think should have been done on your behalf?
>
> MR. CLARK: I don't think so sir.

dckt. 99 at 34. The Court has examined the record and the allegedly improper citation, and does not come to the same conclusion as the petitioner. The respondent clearly cited to the record correctly. Consequently, upon a close examination of the record, the Court finds no merit to the petitioner's claim that the respondent improperly cited to the record.

### III. Recommendation

For the reasons stated, the undersigned recommends that the petitioner's §2255 motion (cr dckt. #144, cv dckt #1) be **DENIED** and **DISMISSED with prejudice** from the active docket of this court.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July14, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE